Kathleen Elaine SPARKS, Respondent,

v.

Roger B. SPARKS, Appellant.

No. 52853.

Missouri Court of Appeals, Eastern District, En Banc.

Jan. 24, 1989.

Application to Transfer Denied May 16, 1989.

Theodore S. Schechter, Ellen F. Watkins, Cynthia Ann Dobel, St. Louis, for appellant.

Irl B. Baris, St. Louis, for respondent.

CARL R. GAERTNER, Judge.

Husband appeals from an award of temporary maintenance pendente lite, attorneys fees, and expenses in a dissolution action. We find the court erred in granting affirmative relief to wife while she concealed information concerning her alleged attempt to hire a contract killer to murder her husband by invocation of her fifth amendment privilege against self-incrimination and we reverse and remand.

I

Wife's petition for dissolution alleges that Kathleen Elaine Sparks and Roger Bruce Sparks were married on June 24, 1977, a son was born on November 16, 1982 and that the parties separated November 28, 1985. The Petition for Dissolution was filed on December 10, 1985.

In January 1986 wife was arrested and subsequently indicted for the attempted murder of her husband. This criminal action is still pending in the Circuit Court of St. Louis County some 24 months after the grand jury returned the indictment.

On March 19, 1986 wife filed a Motion for Temporary Maintenance, Attorneys Fees, Suit Money and Costs Pendente Lite. Custody of the minor child was with husband and no modification of this arrangement was sought. Husband filed interrogatories, all but two of which wife answered. These two, relating to wife's relationship to the alleged contract killer and her actions in attempting to have her husband murdered, she refused to answer claiming her Fifth Amendment privilege against self-incrimination. Husband then moved to strike wife's pleadings or to bar her from affirmative relief. The trial court denied these motions and scheduled a hearing on wife's PDL motion.

At this hearing wife again refused on Fifth Amendment grounds to answer any questions which might pertain to the charge of attempted murder. She testified she was unemployed and had no income since her husband had ceased weekly deposits of $210 into her bank account after her arrest in January 1986. Although she had a college degree and experience in operating an antique business and working in her father's CPA office, she had not sought employment. She claimed to be unable to work because of headaches, lack of transportation, and because of all the litigation in which she was involved. She had been living with her parents and other relatives under circumstances which she found very unsatisfactory.

A tape recording containing voices identified as those of wife and one Jeffery Imboden was admitted in evidence. The recording is of a conversation of January 13, 1986 in which wife promised to pay Imboden $15,000 from the proceeds of life insurance in return for killing her husband. The recording includes discussions of such details as the amount of insurance on husband's life, the furnishing of a gun to Imboden, and a scheme for future contact by means of coded classified newspaper ads. Wife and Imboden were arrested on January 16, 1986. One of the arresting officers testified that wife denied knowing Imboden at first, but when told of the tape recording she replied "yes, but I didn't mean it" and "well, I took it back and I contacted Jeff and told him I didn't want to do it."

The trial court found that wife was unable to be gainfully employed solely because of the litigation in which she is involved and that she was without adequate means of support or to employ counsel. The trial court concluded that the tape recording was properly qualified and admissible in evidence but did not constitute a bar to an award to wife as conduct "is only one of numerous factors to be considered [pursuant to 452.335 RSMo.1986] and consideration of all other factors requires an award be made." The court ordered husband to

pay wife the sum of $840 per month retroactive to September 1, 1986 and $18,377.04 for attorneys fees and litigation expenses. In addition, the court ordered a stay of the dissolution proceeding until the criminal case against wife was concluded.

Husband appeals contending the award of maintenance and attorneys fees was an abuse of discretion and was not supported by substantial evidence, that the trial court erred in overruling his motion to deny wife affirmative relief, and in ordering a stay of the dissolution case until the criminal case against wife is concluded.

Our review is circumscribed by the oft-stated standards of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

## II

Throughout the pre-hearing proceedings and during her testimony, the trial court assiduously protected wife's constitutional right to refuse to testify regarding her relations and dealings with Imboden or to any matter concerning her alleged attempt to have her husband murdered. That she has a right to claim the privilege against self-incrimination so long as she is exposed to possible criminal prosecution is unquestioned. However, invocation of the privilege in a civil case, especially by one seeking affirmative relief from the court, is not without its price. We have not discovered a single case in which a Missouri court has approved, over timely objection, the granting of affirmative relief to a party who has asserted the privilege against self-incrimination regarding a subject relevant to the case.[1] The rule was stated by the Missouri Supreme Court in *Franklin v. Franklin*,

365 Mo. 442, 283 S.W.2d 483, 486 (1955) as follows:

> The law is that upon oral or written interrogatories being properly propounded to discover relevant and material facts peculiarly and exclusively within the knowledge of the party, his refusal to answer justifies striking his pleadings. Section 510.060 RSMo.1949, V.A.M.S.; *Goodrich Zinc Corporation v. Carlin*, D.C., 4 F.2d 568; *State ex rel. Williams v. Buzard*, 354 Mo. 719, 190 S.W.2d 907, 909[2, 3]; *State ex rel. Cummings v. Witthaus*, 358 Mo. 1088, 219 S.W.2d 383, 390, 8 A.L.R.2d 1124. This sound and salutary rule applies, insofar as we are advised, without exception to all parties seeking relief in the courts.

The Supreme Court proceeded to point out that application of this rule was especially appropriate in a divorce action, governed by the principles of a court of equity. This additional comment by the Supreme Court has been seized upon by wife's counsel as a means of discrediting *Franklin* as a continuing authority. He argues "*Franklin* must be read in the context of the law which then required a party seeking a divorce to be an innocent and injured party and therefore to have 'clean hands'". This argument construes *Franklin* too narrowly. The opinion notes the rule applies "especially" to divorce actions governed by equitable principles such as the clean hands doctrine; it does not state that the rule has singular application to such cases. Moreover, "proceedings decided under the Dissolution of Marriage Act are no less charged with the principles of equity than are the old divorce actions." *McCully v. McCully*, 550 S.W.2d 911, 914 (Mo.App. 1977).

The facts in *Franklin* are particularly analogous to those of the instant case. In both the case at bar and in *Franklin* the wife initiated proceedings to dissolve the

---

**1.** In *Morton v. City of Maplewood*, 581 S.W.2d 924, 925 (Mo.App.1979) a motion to strike plaintiff's pleadings because of his claim of fifth amendment privilege at an administrative hearing was first filed on appeal. This court permitted plaintiff to seek reversal of the administrative agency decision because the request for

sanctions was not timely presented to the proper tribunal. We find no other case in Missouri in which a plaintiff's pleadings were not stricken or his cause dismissed at either the trial or the appellate level after his assertion of the fifth amendment privilege against self-incrimination.

marriage. In both the wife refused on self-incrimination grounds to answer written interrogatories pertaining to a relevant issue. In both the wife sought temporary alimony or maintenance and attorneys fees PDL but refused to answer questions claiming the privilege against self-incrimination. In both wife contended the denial of the husband's motion to strike her pleadings and the granting of her motion for temporary allowances was discretionary. In fact, our predecessor, the St. Louis Court of Appeals, in *Franklin v. Franklin*, 273 S.W.2d 737, 741 (Mo.App.1954) found no abuse of trial court discretion and affirmed the trial court's award. The Missouri Supreme Court in the second reported *Franklin* opinion, at 283 S.W.2d 483, reversed the trial court and the intermediate appellate court and established the "sound and salutary rule [applicable] ... without exception to all parties seeking relief in the courts". *Id.* at 486.

That no equitable or "clean hands" limitation was impressed upon the *Franklin* rule is evidenced by *Geldback Transport, Inc., v. Delay*, 443 S.W.2d 120 (Mo.1969) in which the Supreme Court applied the rule in affirming the dismissal of a claim for actual and punitive damages. The court adopted the language quoted from an annotation at 4 A.L.R. 545, 546, "a motion to dismiss a complaint, if timely made in the trial court, should be sustained where plaintiff exercised his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved." *Geldback, supra,* 443 S.W.2d at 121.

In *Satterfield v. Satterfield*, 635 S.W.2d 80, 81 (Mo.App.1982) this court described as "sound" the rule that "a party claiming the Fifth Amendment privilege against self-incrimination is not entitled to affirmative relief for himself against other parties." In *Hagenbuch v. Hagenbuch*, 730 S.W.2d 269 (Mo.App.1987) this court upheld the striking of a husband's pleading in a dissolution action after he invoked his privilege against self-incrimination and refused to answer questions relating to alleged marital misconduct. We stated that the *Franklin* rule is not intended to punish for the exercise of a constitutional right but rather is intended to promote fairness and prevent a party from obtaining an advantage from the invocation of the privilege.

Prevention of unfair advantage by concealment of pertinent information on pre-trial discovery by invocation of the fifth amendment privilege was also the basis of the decision in *State ex rel. Pulliam v. Swink*, 514 S.W.2d 559 (Mo. banc 1974) where the court declined to apply the *Franklin* rule against a defendant in a wrongful death case, stating at page 561:

> "The affirmative relief test and waiver theory of *Franklin* and *Geldback* are sound. It is not unfair to preclude one who invokes the assistance of the courts from recovery when he refuses to produce evidence peculiarly within his knowledge pertinent to his right to recover. It is something else again to require one who is in court involuntarily to elect between his constitutional privilege and the automatic entry of a judgment against him."

Recognizing the potential unfairness of permitting a defendant to conceal relevant information during discovery the Supreme Court suggested that "[o]nce the privilege has been invoked to preclude discovery, trial courts have the power not to allow defendant to change his position and testify at trial to his benefit." *Id.* In other words, the constitutional privilege may be used as a shield but not as a sword.

The conflict between reluctance to impose a penalty upon the exercise of a constitutional right and the need to prevent concealment of pertinent information in pre-trial discovery in civil cases has been thoroughly explored in Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege In Civil Cases*, 91 Yale L.J. 1062 (1982).[2] Noting that the approach should

**2.** Professor Heidt compares invocation of the privilege against self-incrimination in civil cases to the mythical conjurer's circle—the circle drawn by a conjurer or wizard around a person concealing all within from demons. "Properly versed in the lore, civil defendants and their employees who intone the formula at every opportunity can draw a surprisingly wide conjur-

not be the imposition of sanctions against the party invoking the privilege but rather the devising of remedies to protect the party stymied by its use from the disadvantage resulting from concealment, the article observes, "courts have shown no hesitation to assist defendants when the person invoking the privilege in a civil case is the plaintiff or the plaintiff's employee. The most common judicial response is to dismiss the plaintiff's action." *Id.* at 1087. The rationale underlying this apparently harsh tactic is the inherent inconsistency between granting a party affirmative relief while simultaneously permitting that party to conceal information which may affect his right to obtain such relief. While no comparable policy consideration applies to the invocation of the privilege by a defendant, dragged into court involuntarily, nevertheless fundamental fairness requires that a plaintiff be afforded some remedy lest a defendant defeat the claim by concealment. The balance inherent in our adversary system is distorted if one party to a civil action is permitted by invocation of the privilege against self-incrimination to unilaterally control full presentation to the fact finder of all of the evidence pertaining to all of the issues. Thus, whether asserted by a plaintiff or a defendant, invocation of the privilege will, in most cases, require some form of judicial response of a remedial nature to eliminate any undue advantage which might flow from the ability to conceal pertinent evidence.

Wife argues that since none of the Missouri cases have mandated the dismissal of the claim or the striking of pleadings, such action is discretionary. We agree that the trial court is vested with discretion in fashioning an appropriate remedy to prevent unfairness and disadvantage from the concealment of pertinent information. However, that discretion does not extend to the granting of affirmative relief to the concealing party while the concealment continues. In *Franklin, supra,* the Supreme

Court reversed the trial court's award of temporary alimony and attorneys fees to a wife who invoked the privilege and reversed the St. Louis Court of Appeals decision characterizing such action as discretionary. However, on the basis of the argument of wife's attorney that her full disclosure would show no criminality, the court remanded the cause to permit her to change her position. In *Geldback, supra,* the Supreme Court stated a motion to dismiss *should* be sustained where a plaintiff exercised the privilege. In *Satterfield, supra,* this court held the party claiming the privilege is *not entitled* to affirmative relief.

■ An analysis of all of the appellate court decisions on this question leads to the conclusion that the awarding of temporary allowances to wife while she refused to answer questions relating to allegations of serious, indeed egregious, misconduct was beyond the trial court's discretion and was a misapplication of law. We are not implying that the assertion of the wife's privilege mandated dismissal of her petition or the striking of her motion for temporary maintenance, although the decisions discussed above all indicate approval of such drastic action. These decisions clearly establish, however, that it was incumbent upon the trial court to devise some remedy, be it prevention of wife's testimony, deferral of her motion, or other appropriate action, to prevent the disadvantage and unfairness inherent in compelling husband to proceed without full disclosure of wife's actions in furtherance of the alleged murder plot.

### III

Under the circumstances of this case we also reject wife's argument that the *Franklin* rule has no application because misconduct is not relevant to a wife's entitlement to temporary maintenance or attorneys fees PDL.[3]

er's circle around their conduct, a circle of mystery that works to their advantage." *Id.* at 1064.

**3.** In this argument wife relies upon such pre-Dissolution of Marriage Act cases as *Berbiglia v. Berbiglia,* 442 S.W.2d 949, 951 (Mo.App.1969).

Because of the extraordinary nature of the allegations of misconduct in this case and because the trial court did in fact consider misconduct, we need not address the question of the continuing authority of such cases in view of the enact-

The record in the instant case reflects recognition by the trial court that the extraordinary nature of the wife's alleged misconduct merited consideration. The large part of five days of testimony was devoted to reception of evidence concerning this issue. The court made a specific finding of each of the requirements set forth in *State v. Spica*, 389 S.W.2d 35, 44 (Mo.1965) regarding the admissibility of tape recordings. The court's conclusion that the evidence of wife's misconduct warranted consideration indicates his acceptance of the evidence as credible. His further conclusion that wife's misconduct was outweighed by consideration of the other factors set forth in § 452.335.2 is an exercise of discretion subject to appellate review only for abuse thereof.

Husband argues that by giving little or no weight to the evidence of such egregious misconduct as attempting to hire a contract killer to murder him, standing unrefuted on the record and supported by the strong adverse inference arising from wife's refusal to testify concerning the matter, *Woy v. Woy*, 737 S.W.2d 769, 773 (Mo.App.1987), the trial court was guilty of an abuse of discretion. Despite the apparent incongruity of requiring a husband to continue to support his wife while she does not deny her involvement in a scheme to have him murdered, we do not address the issue of abuse of discretion. Our conclusion that the trial court misapplied the law in granting wife affirmative relief while she concealed pertinent evidence by invoking the privilege against self-incrimination is dispositive.

## IV

For the same reason we do not rule at this time on husband's contention that the trial court's finding of wife's inability to be gainfully employed because of her involvement in litigation is a misapplication of the law and is not supported by the evidence.

■ We do address husband's complaint regarding that portion of the court's order which imposes a stay of proceedings until after the completion of the wife's pending ment of § 452.315.5 and 452.335.2(7) RSMo.

attempted murder case. Although we question the wisdom of this order and note the constitutional question of denying the husband's right of access to the courts as guaranteed by Article I § 14 of the Constitution of Missouri, the order is interlocutory, not final, and we have no jurisdiction to consider it on appeal. Wife may seek a vacation of the stay order in view of our ruling on her motion for temporary allowances. Husband may seek to set aside the stay order and proceed to final determination. In any event, such relief should be addressed to the trial court in the first instance.

The order of the trial court awarding wife temporary maintenance, attorney fees, and expenses is reversed. The cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

All motions taken with the case are overruled.

REINHARD, STEPHAN, CRIST, SATZ, SIMON, GARY M. GAERTNER and GRIMM, JJ., concur.

SMITH and KAROHL, JJ., concur in result with separate opinion by SMITH, J.

PUDLOWSKI and CRANDALL, JJ., concur in result with separate opinion by CRANDALL, J.

SMITH, Judge, concurring.

As the author of the original divisional opinion affirming the temporary awards, it is appropriate for me to state my reasons, after reconsideration, for concurring in the result of the en banc opinion.

I am unable to construe the cases relied upon by the majority as making mandatory the imposition of sanctions including denial of affirmative relief upon a party invoking the privilege against self-incrimination. *Franklin v. Franklin*, 365 Mo. 442, 283 S.W.2d 483 (1955) involved the refusal of the wife to answer questions relating to the validity of her marriage to husband. 1986.

The burden of establishing a valid marriage was upon the wife who was seeking the divorce. In turn her right to any temporary maintenance was dependent upon the existence of a valid marriage. The court holding was that her refusal to supply evidence concerning the validity of her marriage precluded the court from having facts "that were essential to an intelligent and lawful adjudication of her right either to divorce or to temporary support and suit money." In short, wife's invocation of the privilege resulted in the failure to establish an essential element of her right to recover. Dismissal of her claim for temporary awards was required, not as a sanction for refusal to testify, but because without the testimony she had established no claim for relief. The language relied upon by the majority from that opinion was dicta and must be evaluated upon the basis of the actual holding of the court.

The same situation existed in *Geldback Transport, Inc. v. Delay*, 443 S.W.2d 120 (Mo.1969). There appellant's cross-claim had been dismissed because appellant refused to answer interrogatories relating to his ownership or right to possession of a tractor. The court stated "[h]ere appellant on his cross-claim is in the position of a plaintiff, having the burden of proof, and could only prevail by proving ownership or right of possession under a lien or other valid claim. He could not recover anything without disclosing the basis for his claim and making proof of it." l.c. 121.

The remaining cases cited by the majority do no more than state that it is proper to strike pleadings or deny affirmative relief upon invocation of the privilege against self-incrimination. Those cases do not state that such sanctions are mandatory. Here the trial court has, within its discretion, refused to invoke sanctions. Proof of wife's conduct is in no way a necessary element of her claim for a temporary award. I cannot agree to the proposition that invocation of the privilege against self-incrimination requires as a matter of law the denial of affirmative relief to wife.[1]

I am also unable to agree with the at least implicit holding of the majority that conduct is a relevant and material consideration in pendente lite proceedings. The doctrine espoused by the majority is applicable where the party invoking the privilege refuses to produce evidence "pertinent to his right to recover." *State ex rel. Pulliam v. Swink*, 514 S.W.2d 559 (Mo. banc 1974) [1]. The information sought must be "relevant and material." *Franklin v. Franklin, supra*, [11, 12]; *Hagenbuch v. Hagenbuch*, 730 S.W.2d 269 (Mo. App.1987) [1].

*Berbiglia v. Berbiglia*, 442 S.W.2d 949 (Mo.App.1969) [1, 2], held that temporary maintenance awards are intended to maintain the status quo, and that marital conduct or misconduct are not properly to be considered in making such awards. The majority opinion declines to address this issue although Footnote 3 appears to cast some doubt on the continuing vitality of *Berbiglia* in view of Sec. 452.315.5 and 452.335.2(7), RSMo 1986. But in holding that wife must be denied affirmative relief the majority has found that her misconduct is pertinent, material and relevant to her claim for temporary maintenance. To the extent the trial court has allowed and considered such evidence here I do not disagree that we may consider it on appeal. To the extent the majority opinion can be considered a holding that such conduct is material and relevant in pendente lite proceedings generally I must express grave reservations.

Pendente lite proceedings should by definition be brief and should occur early in the litigation before extensive discovery has occurred. The very purpose of temporary awards is to allow a needy spouse to subsist during the pendency of the litigation while he or she goes through the pre-trial procedures, including discovery and preparation, necessary to establish entitlement to permanent maintenance and other substantive matters covered by the dissolution.

---

**1.** I would doubt for example that if the parties had obtained mutual criminal assault charges against each other that wife would automatical-

ly be denied temporary maintenance if she invoked the privilege and husband did also.

To require litigation of marital misconduct at the pendente lite stage is to destroy the very purpose of temporary maintenance awards. The potential burden on currently overworked trial courts is enormous. I am unable to conclude that the statutes cited were intended to, or should be interpreted to, create chaos.

I believe that misconduct of the party seeking temporary maintenance is not a necessary nor advisable consideration in pendente lite proceedings and such evidence need neither be admitted nor considered by the trial court. To the extent the majority opinion holds the contrary, I respectfully disagree.

That said, I must concede that here the trial court not only admitted such evidence but also considered it. Given our accepted principles and scope of review, the facts before us present a hard case and hard cases make bad law. The result arrived at by the majority is eminently just and equitable. The evidence considered and credited by the trial court supports its conclusion that wife was guilty of misconduct. That misconduct was egregious consisting of an attempt to commit the most serious crime in our state criminal code—deliberate, premeditated murder. And that attempt was directed against her partner in the marriage from whom she now seeks support during the pendency of the litigation. Justice and equity must condemn a result which allows her to gain such support.

We are closely constrained in our scope of review by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Given the strictness with which we have consistently applied that case I have difficulty saying here that any of the four tests for reversal enunciated there are present. Essentially it appears to me that the trial court in evaluating the evidence before it has made a judgment call which does not comport with justice, equity or common sense. Our rules of appellate review, including *Murphy v. Carron*, have evolved over many years and are, in the vast majority of cases, highly effective in properly resolving issues presented to appellate courts. As

with any man-made rules they are not perfect and on very rare occasions cases will come before us where strict application of those rules will cause a result at war with acceptable human standards and expectations. Rather than create what I regard as bad law which will impact upon the multitude of cases in which the rules and procedures function properly and effectively I would prefer to say that the case before us is *sui generis* and that the constraints of *Murphy v. Carron* do not preclude us from reversing the trial court's judgment as clearly inequitable and unjust. On that basis I concur in the result.

CRANDALL, Judge, concurring.

I concur in the result reached by the majority, but I believe that the rationale given avoids the pivotal issue in this case. The majority hinges its holding on the impropriety of the trial court's grant of affirmative relief to wife after she asserted her constitutional privilege against self-incrimination regarding "a subject relevant to the case"; namely, her misconduct in arranging for her husband's murder. In this case wife's exercise of her Fifth Amendment privilege is not material if evidence of her misconduct is not admissible, as the concurring opinion urges. In addition, wife's refusal to answer was not prejudicial to husband because there was other substantial evidence in the record, found credible by the trial judge, that wife did attempt to have her husband murdered. If evidence of misconduct is not admissible and there was no prejudice to the opposing party, it would appear that the imposition of sanctions because of wife's invocation of the privilege is a questionable basis for the result reached.

Section 452.315.5, RSMo (1986) provides that, "[o]n a basis of the showing made and in conformity with § 452.335 ..., the court may issue ... an order for temporary maintenance...." Section 452.335.2(7), RSMo (1986) provides that a factor to be considered is "[t]he conduct of a party seeking maintenance during the mar-

riage." [1] Thus, Missouri's statutory law specifically provides that evidence of conduct may be admissible in a pendete lite hearing.

*Berbiglia v. Berbiglia,* 442 S.W.2d 949 (Mo.App.1969), referred to in the majority and concurring opinions, was decided in 1969. It held that marital misconduct was not properly considered in making awards of temporary alimony. *Id.* at 951. The Missouri dissolution statute became effective January 1, 1974, approximately five years after the *Berbiglia* opinion. The jurisprudential value of *Berbiglia* is therefore limited by subsequent legislative enactments. To the extent that *Berbiglia* expresses a view contrary to the present statutes, it should no longer be followed.

I agree with the concurring opinion of Smith, J., that "[p]endete lite proceedings should by definition be brief and should occur early in the litigation...." I also agree that "[t]he potential burden on currently overworked trial courts is enormous...." I am confident, however, that trial judges, in the exercise of their broad discretion, can properly decide what type of conduct is a relevant factor bearing on an award of temporary maintenance, attorney fees and expenses. Section 452.315.5. Trial judges can best ascertain the quantity of evidence that should be permitted on a given issue and permit only such evidence as would be consistent with the objective of a brief motion which has as its purpose maintaining the status quo.

In the case before us, we have a situation where the trial court found, based upon properly admitted substantial evidence, that wife attempted to have her husband murdered. The trial court also found that conduct "is only one of numerous factors to be considered [pursuant to 452.335 RSMo.1986] and consideration of all other factors requires an award be made."

I agree that conduct is only one of numerous factors in determining an award of temporary maintenance. I disagree that consideration of other relevant factors re-

quires that an award be made. The misconduct of the wife in this case is so egregious as to outweigh all other relevant factors and therefore prohibits the affirmative relief granted by the trial court. It is wrong to require one spouse to pay temporary maintenance, attorneys fees and expenses to the other spouse who has attempted to have the one spouse murdered. The law should not be used to create a wrong. The exercise by the wife of her Fifth Amendment privilege is, in this case, irrelevant. If she had not exercised her Fifth Amendment rights and the trial court had made the same findings as to her conduct, she should still be prohibited from receiving the award given.

On that basis, I concur in the result only reached by both the majority opinion and the concurring opinion of SMITH, J.

---

**1.** Section 452.335.2(9), RSMo (Supp.1988) now provides for the trial court to consider "[t]he conduct of the *parties* during the marriage." (emphasis added).