Maudie McLERRAN, Respondent,

v.

Lloyd Junior McLERRAN, Appellant.

No. KCD 28942 and KCD 29112.

Missouri Court of Appeals,
Kansas City District.

Jan. 30, 1978.

Motion for Rehearing and/or Transfer
Denied Feb. 27, 1978.

Application to Transfer Denied April
10, 1978.

Pine & Ulrich, Gayles R. Pine, Warrensburg, for appellant.

George H. Miller, Royal M. Miller, John E. Miller, Miller, Miller & Miller, Sedalia, for respondent.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

Appeal by husband from decree in marriage dissolution proceeding insofar as it related to division of marital property. Consolidated with that appeal is appeal of husband from judgment of contempt, based upon his failure to comply with court's decree dividing marital property.

Maudie Meads, a widow with four minor children, was marred on September 4, 1963 to Lloyd Junior McLerran, the father of a teenage daughter by a prior marriage. Until their final separation in September, 1973, the parties with their children (no children

were born to the marriage) resided on a 33.5-acre farm which Maudie and her former husband had owned and which became her sole property upon his death. In 1964, the parties bought an adjoining 43-acre farm for $6,000. The parties, together with the children, farmed these two tracts along with other rented land, and the proceeds of the farming operation were expended for improvements to the 33.5-acre farm, paying for the 43-acre tract, and general farm and household operating expenses. The farm operation included cash crops of grain and also a livestock operation, involving registered Angus cattle and hogs. While her children were minors, Maudie received on their behalf social security and veteran's benefits, earned by her former husband. These payments exceeded $59,000 during the period of the marriage. Some $45,000 of this amount went into family living expenses. The balance went into saving accounts, paid to the children as they attained their majority. Junior worked as a sales clerk one day a week during the marriage, earning $25 per day for such work, which he contributed to the family expenses.

Shortly before the final separation in September, 1973, the parties purchased a house in Clinton for $27,500. Upon the separation, Maudie, with her two minor sons, moved to that house and Junior remained at the farm residence.

The decree of dissolution was entered in May, 1975. The property subject to division was as follows:

1. The 33.5-acre farm.
2. The 43-acre farm.
3. The Clinton residence.
4. 74 head of cattle.
5. Sows and pigs.
6. 1968 Pontiac auto.
7. 1973 Chevrolet pickup truck.
8. Two tractors, hay baler, combine.
9. Lot of miscellaneous farm tools and equipment.
10. Household furnishings.

The Clinton residence had been financed by a $17,500 loan secured by a deed of trust and a $10,000 unsecured loan. The value of the parties' equity was nil. In addition the parties were obligated on a $10,000 loan to the First National Bank of Clinton, secured by a chattel mortgage on machinery and livestock.

The court's decree awarded the 33.5-acre farm to Maudie. The remainder of the property was to be divided, with Junior to receive an additional $1,965 for contribution to the increased value of the 33-acre tract.

In the decree here appealed from, the court notes that at the time of the dissolution proceedings, Junior agreed to an auction sale, at which the livestock, farm machinery and some furniture would be sold. According to the court, he did not conduct the sale, "but instead appealed from the property disposition order to the Missouri Court of Appeals, Kansas City District."

When the matter came on for hearing in this court, it was concluded that the record was too sparse to permit review of the trial court's order and the cause was remanded for further hearing and action by the trial court.

A hearing was held on June 26, 1976, at which the following particular matters were developed:

1. Following the first order and while Junior was living in the residence on the farm, described by Maudie as "in a beautiful shape" in 1973, the house had been practically destroyed, dogs had ruined the carpeting, the plumbing had been allowed to rust, holes had been shot in the walls, etc.

2. Junior had disposed of, admittedly, $21,181.18 worth of crops and livestock from the farm, without consulting Maudie or in any way accounting to her.

At the conclusion of the hearing, the court made the following division of the marital property:

To Junior:

1. "The moneys he has already received and now has in his possession as described above." (Apparently this referred to the proceeds of the sales of livestock, which the court had previously detailed in its order.)

2. A deep freeze, a heater, and other furniture which he brought to the marriage.

To Maudie:

1. The 33 and 43-acre tracts.

2. The 1968 Pontiac and the Chevrolet pickup.

3. The farm machinery.

4. A sow and four or five pigs.

5. All household furniture in her possession at Clinton or on the farm, except that awarded to Junior.

6. The balance remaining of $10,801.03 in the hands of the clerk of the court, after payment to the First National Bank of Clinton of $6,200, the balance due on the $10,-000 livestock and machinery note above mentioned, and unpaid court costs.

(The $10,801.03 represented the proceeds of cattle sold by Junior. At the hearing, he stated that that amount plus some $3,779.66 that he had received from other sales of cattle were in his safe deposit box at a Warsaw bank. The court ordered Junior to appear at the bank the following Monday and to deliver the contents of the box to officers of the First National Bank of Clinton who were ordered to deposit the same to the credit of the clerk of the court. When the box was opened, only the one check for $10,801.03 was in it and it was so deposited.)

There was little evidence on the value of the property involved. There was testimony that while the house on the 33-acre farm was in "beautiful" shape, $40,000 had been offered for the place. Junior valued the 43-acre tract at $600 per acre. The Chevrolet truck was inoperable and had been sitting in a field for several months. It can be assumed that any household furnishings to which appellant might be entitled were of nominal value.

The Clinton house was permitted to be returned to the financing agency in return for a release of the parties from liability for any deficiency.

On this appeal, the contention of appellant is not clearly articulated, but apparently his complaint is against the trial court's failure to allow him the $8,915 which he contributed to the marriage in assets owned by him prior to the marriage and against its "awarding all of the marital property owned by the parties to the Respondent which was not a division of marital assets."

■ Insofar as the $8,915 is concerned, appellant makes no argument that the certificate of deposit and subsequently sold boat which made up that total amount have remained intact or that there is any demonstration that identifiable property was exchanged therefor which could qualify as "property acquired in exchange for property acquired prior to the marriage" and which would be non-marital property under Section 452.330 2.(2), RSMo 1975 Supp. Therefore, there was no obligation upon the court to allocate this specific sum to appellant.

As for the division made of the property, the trial court made rather extensive findings as the basis for the division which he made. He found that, primarily by her use of the social security and veteran's administration payments received by her, Maudie had contributed substantially more toward the acquisition of the marital property than Junior had. § 452.330 1.(1), RSMo 1975 Supp. The court further found that:

" * * * Plaintiff as a wife, homemaker and an active worker on the farm in making improvements and caring for livestock, fulfilled her marital obligations substantially—the defendant did not claim any misconduct on her part. The court finds however, that Defendant substantially failed in his marital obligations in that: he was addicted to the excessive use of intoxicants; he became drunk and abusive to Plaintiff frequently, and repeatedly assaulted Plaintiff with threats of violence and with actual violence to her person. Following the separation he commenced a course of conduct designed to cause damage to her residence property by permitting the plumbing to freeze and become inoperative during his occupancy, he permitted the sewer serving the residence to be stopped up and continued to use it in that condition, he

caused damaging spike nails to be driven into the walls and doors and woodwork of the residence, holes to be made in the walls, the sink and bathroom fixtures to be rusted and damaged, the shag rugs to be soiled with dog waste, shutters to be torn from the windows, glass to be broken, the residence and grounds to be grown up in weeds, the interior of the residence and grounds to be grown up in weeds, the interior of the residence to be damaged from inside gunshot, and the end of a garage damaged from running a motor vehicle into it. Substantial costs will be required to restore the residence into its former condition. Defendant sold and dealt with the joint property of the parties at will, with no consultation or consent of Plaintiff, and with no accounting or pay over to Plaintiff of any moneys. Defendant told Plaintiff that he would see that she would never enjoy any of her property, and upon one occasion when Plaintiff inquired of him where the cattle had disappeared to Defendant replied by accusing Plaintiff with stealing the cattle."

He found that appellant had brought cash and property valued at $8,915 to the marriage and that respondent brought the 33-acre farm, cash and personal property in the amount of $9,005, and "substantial" vested social security and veteran's administration benefits.

The trial court found that based upon those factors, the division ordered was just.

Appellant has assigned no error on the part of the trial court on its factual findings. He does question the finding that he was responsible for the deplorable condition into which the house on the farm fell following the separation, but, except for pointing to appellant's disclaimer of responsibility, he has made no effort to show that the finding is not supported by the evidence.

Appellant has advanced some abstract propositions in support of which he has cited *In re Marriage of Schulte*, 546 S.W.2d 41 (Mo.App.1977); *Nixon v. Nixon*, 525 S.W.2d 835 (Mo.App.1975), and *Stark v. Stark*, 539 S.W.2d 779 (Mo.App.1976), but he has attempted no demonstration of how the holdings of those cases apply to this case.

■ His primary complaint appears to be that the trial court's division of the property was made for the purpose of punishing him for his conduct subsequent to the dissolution decree. He has not shown that the trial court was not entitled to take such conduct into consideration in making its division of the property. Section 452.330 1.(1)–(4) does not limit the trial court to the factors there enumerated in dividing marital property.

Contrary to appellant's contention, the trial court did not award all of the marital property to respondent. It permitted appellant to retain the proceeds of the sale of a portion of the livestock, which was marital property. Respondent suggests that there was other livestock, particularly calves born between the date of the dissolution and the date of the hearing, for which appellant failed to account. Appellant was somewhat equivocal in his testimony on this score, saying that he didn't "believe" he had sold other cattle. Respondent's assumption on this score need not be pursued.

■ The burden was upon appellant to demonstrate that the trial court's order either was not supported by substantial evidence or was against the weight of the evidence, or erroneously declared the law or erroneously applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc, 1976). He has not sustained that burden and, therefore, the trial court's judgment must be affirmed.

The court's decree, entered July 3, 1976, declared that Maudie " * * * is entitled to immediate possession * * * " of the property awarded her. On July 12, Junior filed notice of appeal to this court. On July 13, Maudie filed an affidavit on the basis of which the court issued its order to Junior to show cause why he should not be punished for contempt for failure to abide by the July 3 decree. An application for prohibition was made to this court which declined to issue the writ. The matter came on for hearing on October 12, 1976, after the stop

order issued by this court had been withdrawn. At that time counsel for Junior pointed out that an appeal had been filed from the division decree. The trial court stated that "on an appeal it doesn't stay an execution of a decree on possession of real estate." The court denied a request for continuance pending disposition of the appeal and when appellant offered no evidence, the trial court found Junior in contempt. It sentenced him to the custody of the sheriff for 90 days "or until such time as he gives possession of this property in the Court decree to" Maudie. A request that the court set bond was denied. This court later fixed bond at $2,500.00. Notice of appeal from the judgment of contempt was filed.

On this appeal, appellant contends that since he had perfected his appeal from the decree dividing the property, that judgment was not final and therefore he was not guilty of contempt in failing to abide by it. Appellant's brief recites the facts, some matters which do not appear in the transcript, and a single legal argument, here set forth in toto:

"If appellant had conveyed his interest in marital property to his ex-wife, Maudie McLerran, pursuant to the judgment of the court, then his appeal would have been moot as there would have been no issue for the appeal court to decide on appeal. The Judgment of the trial court on July 3, 1976, relative to division of marital property was not final and the trial court was in error in using the strong arm of the law to compel appellant to obey the judgment which was not final because of appellant's appeal.

"*State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567 (Mo.1976)

"*Fulton v. Fulton*, 528 S.W.2d 146, 157 (Mo. App.1975)

"V.A.M.R. Civil Rule 92.15

"*State ex rel. Wendt v. Journey*, 492 S.W.2d 861 (Mo.App.1973)."

The cases cited by appellant, other than repeating the oft-stated admonition that contempt is a power to be exercised with restraint (*Fulton v. Fulton*, supra), do not deal with the proposition advanced by appellant, i. e., that the appeal precluded enforcement of the trial court's decree. The appellant has the burden of demonstrating the error on the part of the trial court and his unsupported statement of the proposition is not adequate for that purpose. Inasmuch as the decree in question is affirmed, appellant will be obliged to comply with its terms. In these circumstances, this court does not consider itself obligated to pursue the matter on its own and since appellant has not borne his burden of showing that the trial court was wrong, the trial court's order will be affirmed.

Judgment affirmed.

All concur.