**In re MARRIAGE OF WRIGHT.**

**Jack A. WRIGHT, Petitioner–Appellant,**

v.

**Mary E. WRIGHT,
Respondent–Respondent.**

**No. 16317.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 26, 1990.

Philip W. Richardson, Webb City, for petitioner-appellant.

Robert P. Baker, Sarcoxie, for respondent-respondent.

HOGAN, Judge.

In this dissolution of marriage case, the question on appeal is whether the trial court's division of marital property is so manifestly disproportionate as to constitute an abuse of discretion. Believing that the division of marital property is so disproportionate as to be manifestly inequitable and an abuse of discretion, we modify the trial court's judgment and enter such judgment as that court should have entered. Rule 84.14.

Petitioner Jack A. Wright, to whom we shall refer as the plaintiff, was married to respondent Mary E. Wright, to whom we shall refer as the defendant, on August 22, 1954. When they were first married, they

lived in rented houses and "on different farms." In 1964, the parties bought a 120-acre farm from the defendant's parents for $12,000. They lived on this farm continuously from the time they purchased it until they finally separated in August or September of 1986. During the course of their marriage the parties became the parents of two children. One child is a female child born September 13, 1972, the other a male child born June 11, 1975. The defendant has been awarded custody of the children.

The parties lived frugally. The plaintiff testified that while he was operating the farm, "[w]e were poor." The defendant testified that for a good many years, she made her own clothes. The household furnishings were those the parties had purchased when they were first married. The farm house is heated by a wood stove and has no running water. The house and the barn needed repair at trial time. According to the plaintiff, the farm made a profit "once in a while."

In 1974, in order to supplement his income, the plaintiff became a rural letter carrier. At first plaintiff was a "relief carrier" and in 1980, he became a full-time employee of the United States Postal Service. Plaintiff's job requires him to collect and deliver the mail along a rural route. The plaintiff drives "[p]robably a hundred miles a day." Plaintiff's federal income tax return for the calendar year 1987 indicates he earned a little more than $34,000 in wages. Vouchers introduced as petitioner's exhibits 7 and 8 indicate the plaintiff was paid twice a month and that his biweekly net earnings were $1,000 to $1,100. Defendant's separate federal income tax return for the calendar year 1987 indicated the farm had a capital gain of $1,463.51, but when depreciation was factored in, the farm operation showed a net loss of $4,451.

Except for the parties' estimates, we find little or no evidence of the value of the farm. The plaintiff testified that the farm was a 120-acre farm. There was a house on the farm, but the house was not particularly described. There was a barn and a chicken house on the farm, neither of which was described. According to the plaintiff, there were 66 tillable acres, 9 acres in timber and about 40 acres which could be used as pasture. Plaintiff further estimated that the tillable land could be rented for $1,320 per year; if the tillable land was let on shares, "you might make more." The 80 acres of pasture, if rented, would graze about 20 to 25 head of cattle and would rent for $24 per head per 8-month year. No evidence of comparable sales was produced. So, and to reiterate, we have no evidence of the value of the farm before us except the parties' estimates and plaintiff's speculative evidence of the rental value of the farm.

As required by local rules, the parties filed a schedule and a proposed disposition of all marital and nonmarital property and liabilities. The plaintiff valued the farm at $48,000 and proposed that it be distributed "equally" to both parties. The defendant estimated that the farm was worth $40,330 and proposed that it be set off to her. Otherwise, the assets and the proposed distribution of those assets (the parties treated all their assets as marital assets) was as follows:

| Asset (Liability) | Plaintiff's Valuation | Defendant's Valuation | Plaintiff's Proposed Distribution | Defendant's Proposed Distribution |
| --- | --- | --- | --- | --- |
| 1. Farm | $48,000 | $40,330 | Equally | To defendant |
| 2. 1965 Ford pickup | $ 500 | $ 400 | To defendant | To defendant |
| 3. 1986 Ford pickup | 3,500 subject to $3,200 encumbrance | 5,500 | To plaintiff | To plaintiff |
| 4. 1978 Ford automobile | 1,000 | 600 | To defendant | To defendant |
| 5. Plaintiff's bank account | 1,200 | ——— | To plaintiff | To plaintiff |
| 6. Postal savings account | ——— | 1,600 est. | None proposed | To plaintiff |
| 7. Defendant's bank account | 3,000 est. | 1,300 | To defendant | To defendant |

| Asset (Liability) | Plaintiff's Valuation | Defendant's Valuation | Plaintiff's Proposed Distribution | Defendant's Proposed Distribution |
|---|---|---|---|---|
| 8. Bank account w/First Security | $ 700 | $ 768 | To defendant | To defendant |
| 9. Contents of farm house | 2,500 | 500 | To defendant | To defendant |
| 10. Tools, etc. | 150 | 150 | To defendant | None proposed |
| 11. Livestock | 12,600 | 12,000 | To defendant | To defendant |
| 12. John Deere tractor | 5,000 subject to $5,000 encumbrance | 2,800 | To defendant | To defendant |
| 13. Two tractors | –0– | –0– | To defendant | To defendant |
| 14. Life Ins. Policy | –0– | –0– | None proposed | Defendant to be made beneficiary |
| 15. Civil Service Retirement | 8,700 | –0– | To plaintiff | ½ to plaintiff; ½ to defendant |
| 16. Plaintiff's personal effects | 250 | unknown | To plaintiff | To plaintiff |
| 17. Defendant's personal effects | unknown | 150 | To defendant | To defendant |
| 18. 1983 Lincoln auto | 5,000 subject to $5,200 encumbrance | unknown | To plaintiff | None proposed |
| 19. Thrift Savings Plan | 1,324 | unknown | To plaintiff | None proposed |

This schedule, as we have just indicated, is the summary (and supplemental summary) of marital and nonmarital property which local rules of the 29th Judicial Circuit require parties to a dissolution action to file. The total value of the marital estate, as indicated by the schedule, is $93,424 according to the plaintiff's estimate, including the plaintiff's estimate of the cash value of his United States Postal Service Retirement benefit, and the marital estate is subject to encumbrances in the amount of $13,400. The defendant's estimate of the total value of the marital estate, which does not include plaintiff's retirement benefit, is $74,798, subject to the same encumbrances. The schedules, as we might more clearly demonstrate, are approximations; quite clearly, the marital estate was not appraised before the property schedule was filed. Some of the values were adjusted during the trial.

The parties also estimated their monthly expenses for the court. Plaintiff estimated his monthly expenses to be $3,162, including $600 for "family support." The defendant estimated her monthly expenses to be $1,025, plus a projected health insurance payment of $150 per month and a projected car payment in the amount of $300 per month.

During the course of the trial, as we have indicated, some of the property values were adjusted, and other pertinent facts were presented to the court. The plaintiff testified that he became a substitute rural mail carrier in 1974; in 1980, he became a full-time rural letter carrier. The defendant questioned the plaintiff about his activities, "over and over" again, believing that the plaintiff was guilty of infidelity. The plaintiff denied having sexual relations with any woman other than the defendant during the time he was living with her, but admitted that shortly after he was separated from the defendant, he had been intimate with another woman.

There was evidence that the defendant was 54 years of age at the time of trial. She was a high-school graduate but she had no college education or vocational training. Nevertheless the defendant insisted that she would be able to manage the farm if she received financial assistance from the plaintiff. The defendant believed she would need $300 per month as maintenance and $600 per month as child support. The defendant rejected the idea that she could "go out ... with a tractor

and grain farm," but believed that she might "run cattle" and remain on the farm and have an income. The defendant wished to remain on the farm "[b]ecause it's a way of life," and she had never lived anywhere but on a farm. At the close of all the evidence, the trial court addressed the parties as follows:

"Mr. and Mrs. Wright, I'm unable to render you a decision today. I have discussed this with your counsel and I have discussed the reasons and let me repeat to you exactly what the reasons are. The property divisions that are suggested by Mrs. Wright are unrealistic under the law and the Court is not going to be able to follow them. The Court is extremely reluctant to be forced into the position of having to sell the farm out and order an immediate sale and remove the people from the premises ... but under the law, that's about where we stand in order to arrive at an equitable distribution. I have suggested to counsel that I would delay a decision and that I would ask each of them to submit to me a week from Thursday, either your individual decree proposals or much more preferably a joint proposal of the division of property...."

■ Both parties submitted proposed decrees. Those proposed decrees were not included in the legal file, but inasmuch as the proposed decrees and the letters which accompanied them are included in the plaintiff's brief and are conceded to be true, we may consider the correspondence and the proposed decrees as if they appeared in the record. *Nastasio v. Cinnamon*, 295 S.W.2d 117, 119[1] (Mo.1956); *Hempe v. Cape*, 702 S.W.2d 152, 153[1] (Mo.App. 1985).

The decree proposed by the plaintiff would have awarded the farm to the defendant, but would further have awarded the defendant a lien upon the property in the amount of $24,000. The defendant would have been obliged to pay all real property taxes assessed against the property and to have insured the buildings thereon, and if she failed to do so, plaintiff would have had the right to make any such payments which had become due and to be reimbursed therefor by the defendant.

The lien imposed for the plaintiff's benefit would have become due and payable and enforceable by sale "upon the first to occur of any of the following contingencies, to-wit: A. The attainment of the date of June 11, 1996; or B. The marriage of both of the [parties'] children ... prior to June 11, 1996; or C. The [defendant's] termination of her residency upon the above referenced real estate; or D. The termination of the physical custody of the [defendant] of the [parties'] children ... by any means other than each attaining their eighteenth (18th) birthday."

Plaintiff's proposed decree set the following property aside to him "as his sole and separate property": 1) A 1986 Ford F–150 pickup valued at $3,500; 2) A 1983 Lincoln automobile valued at $5,000; 3) A bank account valued at $1,200; 4) A postal savings account valued at $2,145.20; 5) Plaintiff's accrued civil service retirement benefit in the amount of $10,378.39, and 6) Plaintiff's personal effects valued at $250. The total value of these items set aside to the plaintiff—by his proposed decree—is $22,473.59. By the terms of this proposed decree, plaintiff would have assumed three debts, described as "marital debts," totalling $13,400.

Personalty of the value of $25,600 would have been set off to the defendant if the plaintiff's proposed decree had been adopted by the trial court. She would have assumed no debts.

The defendant also framed a proposed decree. Her proposal was that the plaintiff be awarded personalty valued at $24,473.39, including his accrued civil service retirement benefit, and that he assume marital debts in the amount of $13,400. The defendant's proposal included the award of the farm to her. She valued the farm at $40,330. She would also have received personalty valued at $18,668. All in all, the principal difference in the two proposals lies in the disposition of the farm. In the circumstances, the plaintiff's proposed decree would have required the sale of the farm; the defendant's proposal is

lopsided in that she is awarded the farm and the livestock valued, by her estimate, at $52,330. Neither proposal includes distribution of an interest in the plaintiff's pension to the defendant.

In transmitting defendant's proposed decree to the trial court, counsel advised the court that the decree he submitted "failed to make a proposal ... concerning some additional requests of my client." The additional requests were that the plaintiff maintain certain insurance policies—about which there is no controversy—and that the trial court enter an order:

> "that would allow Mrs. Wright to make claim pursuant to the Civil Service Retirement Spouse Equity Act which would allow Mrs. Wright to a claim to Mr. Wright's retirement equity following his death. I have attached a photocopy of the Civil Service Retirement Spouse Equity Act. This does not effect [sic] Mr. Wright's ability to receive the retirement benefits during his life but only would allow Mrs. Wright to receive benefits following Mr. Wright's death. I am hopeful the court will allow me to prepare a decree adding these additional provisions."

The decree which the trial court finally entered, as material here, effected the following division of property: As his share of the marital property, plaintiff was awarded: 1) personal effects valued at $250; 2) a 1986 Ford pickup valued at $5,500; 3) a 1983 Lincoln automobile valued at $5,000; 4) a postal savings account in the amount of $2,145; 5) the accrued cash value of his civil service retirement, calculated at $10,378, and 6) a checking account in the amount of $1,200. It was further ordered that the plaintiff assume marital debts in the amount of $13,400. So, the amount of marital property awarded to the plaintiff was $24,473, subject to debts in the amount of $13,400. His net share of the marital estate was $11,073. The plaintiff was also ordered to pay the sum of $568.88 per month as child support and $200 per month as maintenance. The period during which maintenance is to be paid is not limited.

The defendant was awarded the following items as her share of the marital estate: 1) the farm and the livestock on the farm, valued at $52,330; 2) personal effects valued at $150; 3) a 1965 Ford pickup truck valued at $400; 4) a 1978 Ford automobile worth $600; 5) a checking account in the amount of $1,300; 6) another checking account in the amount of $768; 7) the contents of the farm house, valued at $500; 8) tools and other equipment valued at $150, and 9) one tractor worth $2,800 and two other tractors to which no value was assigned. Defendant's share of the marital estate is $58,998. The decree further provided that:

> "It is further ordered, adjudged and decreed that the Respondent is granted the right to make claim under the Civil Service Retirement Spouse Equity Act for benefits in the event the Petitioner predeceases her."

The plaintiff has appealed from the distribution of marital property, and the order permitting the defendant to claim a share of his civil service pension as a survivor. No objection is made to the open-ended award of maintenance or to the order to pay child support. We consider only those allegations of error properly briefed. Rule 84.13(a), V.A.M.R.

█ The plaintiff has argued the inequity of the trial court's distribution of marital property in terms of the factors set forth in § 452.330.1, RSMo Supp.1989; however, it has never been supposed that the factors or considerations enumerated in § 452.330.1 are exclusive. *In re Marriage of Harrison,* 657 S.W.2d 366, 370 (Mo.App. 1983); *In re Marriage of Heddy,* 535 S.W.2d 276, 281 (Mo.App.1976). The statute gives the trial court great flexibility and far-reaching power to divide the marital property so as to accommodate the needs of the parties upon dissolution and there is no formula respecting the weight to be given the relevant factors which a court may consider. See *In re Marriage of Harrison,* 657 S.W.2d at 370; *Fields v. Fields,* 643 S.W.2d 611, 617[9] (Mo.App. 1982); *In re Marriage of Schulz,* 583 S.W.2d 735, 741[3] (Mo.App.1979); *McLer-*

*ran v. McLerran,* 562 S.W.2d 710, 713 (Mo. App.1978).

We realize that in this case, the trial court was not presented with a plethora of choices in effecting a division of the parties' marital property. Each party wished to retain some interest in the farm, and the plaintiff strongly suggests that some decree should be fashioned which would award both parties some interest in the real property. In particular, our attention is called to *Balven v. Balven,* 734 S.W.2d 909 (Mo.App.1987), wherein our colleagues at St. Louis ordered that real property be awarded to one spouse subject to an interest in the other spouse. We are also cited to *Russell v. Russell,* 740 S.W.2d 672 (Mo. App.1987), wherein the court approved a decree in which the trial court ordered one spouse to pay the sum of $20,500 at 9 percent interest within 5 years to equalize the division of marital property.

We do not disagree with the rulings in *Balven* and *Russell,* but this appeal is clearly distinguishable from those cases. What most obviously distinguishes the case at hand from *Balven* is that the real estate in this case is a farm, used as a means of producing a livelihood. The defendant several times indicated her belief that she could operate the farm as a business if she obtained financial assistance from her husband. It is obvious to this court that the defendant, if she is awarded the farm, will need short-term loans to finance the purchase of livestock and machinery. It is just as obvious that the defendant would be unable to use the farm as collateral if she were awarded a life estate or an estate for years in the real property. Moreover, successful operation of the farm by more than one person depends upon some degree of congenial relationship between the owners of the farm. All the reasons which militate against the continued ownership of a small business by both spouses are present in this case. See *Hopkins v. Hopkins,* 597 S.W.2d 702, 708–09[3][4] (Mo.App.1980); L. Golden, Equitable Distribution of Property § 8.08, p. 248 (1983). We agree that if the farm is to be preserved as such, it should be awarded to the defendant.

Plaintiff further argues that the division of property must be set aside because it is grossly disproportionate. He argues that the defendant was awarded marital property of the value of $58,998 or 84.2 percent of the marital estate and he was awarded only 15.8 percent of the net marital estate. The defendant answers that grossly disproportionate distributions of marital property are routinely approved by our courts, and we agree. See *Mika v. Mika,* 728 S.W.2d 280, 283 (Mo.App.1987). Moreover, the values attributed to the marital property are merely the parties' estimates of value. Of course, owners may testify as to the value of their property or their business in a dissolution case, *Norman v. Norman,* 604 S.W.2d 680, 684 (Mo. App.1980); *In re Marriage of Heddy,* 535 S.W.2d 276, 280 (Mo.App.1976), but such evidence is generally not regarded as anything more than an estimate. III Wigmore, Evidence § 716, p. 56 (Chadbourn rev. 1970). A distribution of marital property is not to be set aside merely because the division is disproportionate, measured by the parties' estimates of values. See *Mika v. Mika,* 728 S.W.2d at 283 (84 percent—16 percent); *Schwarz v. Schwarz,* 631 S.W.2d 694, 695 (Mo.App.1982) (87 percent—13 percent); *Stamme v. Stamme,* 589 S.W.2d 50, 53 (Mo.App.1979) (84 percent—16 percent); *In re Marriage of Burris,* 557 S.W.2d 917, 918 (Mo.App.1977). While we will confess to some misgiving concerning the defendant's ability to operate and maintain the farm, she was very confident she could do so, and we cannot say the trial court erred in awarding the farm and the livestock to her. The division of marital property does not amount to an abuse of discretion because the trial court awarded the farm and the livestock to the defendant.

We do believe that the trial court's award of the plaintiff's pension benefits results in a distribution of marital property so disproportionate as to amount to an abuse of discretion. The court awarded the plaintiff $10,378.39 in accrued retirement benefits, but also granted the defendant "the right to make claim under the

Civil Service Retirement Spouse Equity Act for benefits in the event the [plaintiff] predecease her." The defendant's right to claim a survivor's benefit was inserted in the decree upon the assurance that such a provision would not affect the plaintiff's right to receive the retirement benefit during his life but would only allow the defendant to receive benefits after the plaintiff's death. Plaintiff now argues that giving the defendant a right to claim benefits under the Civil Service Retirement Act, 5 U.S.C.A. § 8331 et seq., diminishes the award of property to the plaintiff to the point of inequity.

As asserted by the plaintiff, the Civil Service Retirement Act provides for benefits to an employee's former spouse in the form of a survivor's annuity. 5 U.S.C.A. § 8341. The cost to the employee is a slight reduction of the employed spouse's "lifetime" or retirement annuity computed as of the date of retirement. 5 U.S.C.A. § 8339(j). However, the cost of a retirement annuity for the defendant should the plaintiff predecease her is not a matter of much concern. What concerns us is that the decree purports to award the current value of the plaintiff's retirement benefit to the plaintiff, but also gives the defendant a right to apply for a survivor's benefit. This implies, or suggests, an obligation on the plaintiff's part to continue his employment and limits his right to elect to withdraw his accrued benefits in a lump sum. A civil service employee has the right to a lump-sum refund of his retirement contributions if he is separated from the service or transferred to a position in which he does not continue subject to the provisions of the Civil Service Retirement Act, 5 U.S.C.A. § 8331 et seq. Payment of such a lump-sum credit voids all annuity rights under the Act. 5 U.S.C.A. § 8342(a); *Yarbrough v. Office of Personnel Management*, 770 F.2d 1056, 1060 (Fed.Cir.1985).

In our view, the right to elect to receive a lump-sum payment of retirement benefits is an offsetting allocation of marital property to the plaintiff. These benefits seem to be apportionable under the applicable federal statutes and rules. See *Matter of Succession of Sims*, 464 So.2d 991, 999 (La.App.1985). If the plaintiff exercises his right to receive a lump sum payment of his accrued benefits, however, all annuity rights accrued to him are terminated and no survivor's benefit will be available to the defendant. The terms of the decree, as we have indicated, effectually deny the plaintiff his right to receive his accrued benefits in a lump sum should he need to do so. We are authorized to give such judgment as the trial court should have given, Rule 84.14, at least when no further factual adjudication is necessary. *Marks v. Marks*, 625 S.W.2d 700, 702 (Mo.App.1981). Accordingly, and in order to equalize the distribution of marital property, that part of the order or decree which grants the defendant a right to make claim for survivor's annuity under the Civil Service Retirement Spouse Equity Act is reversed. In all other respects the judgment is affirmed.

FLANIGAN, P.J., and MAUS, J., concur.