Michael William CREWS, Appellant,

v.

Deborah Louise CREWS, Respondent.

No. WD 53067.

Missouri Court of Appeals,
Western District.

Aug. 5, 1997.

Regina Keelan Bass, Kansas City, for Appellant.

James T. Cook, Kansas City, for Respondent.

Before EDWIN H. SMITH, P.J., and BERREY and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Michael Crews appeals the judgment of the Circuit Court of Jackson County dissolving his marriage to respondent, Deborah Crews. In its decree, the trial court, *inter alia*, awarded physical custody of the parties' two sons to appellant and their daughter to respondent and ordered appellant to pay respondent child support of $350 per month, maintenance of $500 per month and partial attorney's fees of $5,000. Further, the court ordered the parties' marital property divided.

Appellant raises four points on appeal. He claims that the trial court erred in that its division of the marital property and awards of maintenance, child support and partial attorney's fees to respondent were against the weight of the evidence and an abuse of discretion.

We affirm.

### Facts

The parties were married in November, 1973. They had three children: Christopher, born June 8, 1976; Lindsey, born January 7, 1980; and Ryan, born January 16, 1981. In October, 1994, the parties separated. Appellant filed his petition for dissolution on October 5, 1994, and a first amended petition on October 6, 1994. Respondent filed a *pendente lite* petition for temporary maintenance, child support, visitation and attorney's fees on July 10, 1995. The court granted respondent's petition on September 29, 1995, which, *inter alia*, awarded respondent $300 per month for child support and maintenance and temporarily granted custody of Lindsey to respondent and Ryan to appellant.

Appellant's petition for dissolution was heard on December 18 and 19, 1995, and January 2 and 4, 1996, by the Honorable J.D. Williamson, Jr. Both parties submitted statements of marital and non-marital property, statements of income and expense, and Form 14's.

As to the division of property, appellant testified to eligibility for a railroad retirement pension, which he valued at $46,077. The court later granted appellant's motion to amend the judgment and reopen evidence for consideration, wherein appellant's expert witness testified that the value of the pension was actually $24,850. As to his contributions to the marital assets, appellant also testified that he had earned the substantial portion of

the parties' income through his employment during the marriage. Respondent was employed briefly during the marriage, and then on a more permanent basis immediately before the parties' separation. Respondent alleged that appellant physically abused her, especially during the early years of their marriage, and was having an extramarital affair before their separation. Appellant, conversely, alleged that respondent was physically and verbally abusive to him.

As to the parties' income and expenses, appellant's statement of income and expense indicated that his gross monthly income was $2,532, or $30,384 per year, with total monthly expenses of $2,754.08. At the hearing, however, respondent introduced tax statements showing his income to have been $35,947 in 1993, and $43,366 in 1994. His year-to-date income for the pay period ending July 31, 1995, was $24,414, or $4,069 per month. He testified that the income he projected on his income and expense statement was significantly lower because of a new, less favorable contract, no cost-of-living increase, less overtime work and the fact the final payments from a seven-year bonus had been made in 1995.

On March 8, 1996, the trial court entered its judgment dissolving the parties' marriage. *Inter alia,* the court awarded physical custody of the parties' two sons to appellant, and custody of their daughter to respondent, with visitation rights to each parent. The court rejected both appellant's and respondent's Form 14 calculations. It determined that appellant's income was $3,167 per month and respondent's was $867 per month. Based on these incomes, it found the Form 14 presumed correct child support amount (PCCSA) from appellant to respondent to be $483 per month, and $186 per month from respondent to appellant, resulting in a Form 14 "split-custody" PCCSA (SC–PCCSA) of $297 per month from appellant to respondent. However, the trial court rebutted this amount as being "unjust and inappropriate,"

after considering all relevant factors, and awarded respondent child support of $350 per month to begin on December 18, 1995.

As part of its decree, the trial court also divided the parties' property and debts.[1] In addition, the court ordered appellant to pay respondent $500 per month in maintenance, to begin on December 18, 1995, and ordered appellant to pay $5,000 of respondent's legal fees.

Appellant filed a petition to reopen the evidence and amend the judgment on April 5, 1996, when he discovered that he had incorrectly estimated the value of his retirement pensions. The trial court sustained appellant's motion for the limited purpose of receiving evidence in connection with the pensions, and a hearing was held on June 28, 1996. The trial court entered its order on July 10, 1996, which adopted its previous order *in toto.* This appeal follows.

### Standard of Review

"Provisions in a divorce decree will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law." *Allen v. Allen,* 927 S.W.2d 881, 885 (Mo.App.1996), citing *Woolridge v. Woolridge,* 915 S.W.2d 372, 375 (Mo.App.1996); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The burden of demonstrating error is on the party challenging the divorce decree. *Allen,* 927 S.W.2d at 885. We will disturb the trial court's division of marital property only if it is so " 'heavily and unduly weighted in favor of one party as to amount to an abuse of discretion.' " *Dodson v. Dodson,* 904 S.W.2d 3, 6 (Mo.App.1995). As to maintenance orders, the trial court is granted broad discretion, and "[t]he evidence is viewed favorable to the decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Allen,* 927 S.W.2d at

---

1. The marital assets were divided as follows:

Appellant: three cars; two bank accounts; an amount owed by an individual; the non-divisible portion of his retirement pension; and the personal property currently in his possession.

Respondent: the marital residence; a car; a checking account; stocks; and the personal property currently in her possession.

The trial court assigned the majority of the marital debts to appellant and a portion to respondent.

885. Child support provisions will be upheld unless the trial court abused its discretion or erroneously applied the law. *Leone v. Leone,* 917 S.W.2d 608, 611 (Mo.App.1996). The trial court's award of support will not be disturbed "unless the evidence is 'palpably insufficient' to support it." *Elliott v. Elliott,* 920 S.W.2d 570, 575 (Mo.App.1996). We will review the trial court's failure to award attorney's fees to appellant for an abuse of discretion. *Leone,* 917 S.W.2d at 616. "An abuse of discretion is established only when the award is so 'clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.'" *Id.* (citation omitted).

## I. Division of Marital Property

In his first point, appellant alleges in three sub-points that the trial court erred in failing to equitably divide the parties' marital property. He contends in sub-points (A) and (B) that the trial court's division of property was against the weight of the evidence because the trial court failed to: (A) consider his contributions to the marital assets; and (B) consider the good and bad conduct of both parties during the marriage. In sub-point (C), he alleges the trial court failed to properly classify and set-off to him certain personal property as his non-marital property, or, in the alternative, to divide the property as marital property. Because sub-points (A) and (B) both deal with the factors the trial court must consider in its division of property under Section 452.330.1,[2] we will discuss them together. We will address sub-point (C) separately.

### A. Marital Contributions and Conduct of Parties Affecting Property Division

 Section 452.330.1 V.A.M.S.1997 governs the division of marital and non-marital property and provides in pertinent part as follows:

 1. In a proceeding for dissolution of marriage or legal separation ... the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property in such propor-

tions as the court deems just after considering all relevant factors including:

 (1) The economic circumstances of each spouse at the time the division of the property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

 (2) The contribution of each spouse to the acquisition of the marital property, including the contributions of a spouse as homemaker;

 (3) The value of the nonmarital property set apart to each spouse;

 (4) The conduct of the parties during the marriage; and

 (5) Custodial arrangements for minor children.

Of the five factors in § 452.330.1, appellant focuses only on two. In sub-point (A), he focuses on factor (2), claiming that the trial court did not sufficiently consider his contribution to the marital assets. And, in sub-point (B), he focuses on factor (4), claiming that the trial court focused only on his bad conduct and respondent's good conduct during the marriage and failed to consider his testimony as to respondent's bad conduct.

 [Section § 452.330.1] gives the trial court great flexibility and far-reaching power to divide the marital property so as to accommodate the needs of the parties upon dissolution and there is no formula respecting the weight to be given the relevant factors which a court may consider.

*In re Marriage of Wright,* 788 S.W.2d 350, 354 (Mo.App.1990). Section 452.330.1 does not require the division of property to be equal. Instead, the court is only required to make a "fair and equitable" division of property. *Dodson,* 904 S.W.2d at 6. "We presume that the trial court's division is correct and the party challenging it bears the burden of overcoming that presumption." *Replogle v. Replogle,* 903 S.W.2d 551, 556 (Mo.App. 1995).

 The appropriateness of the trial court's division of property in this case turns

---

**2.** All statutory references are to RSMo 1994, unless otherwise indicated.

largely on how it judged the credibility of appellant's and respondent's testimony. The credibility of witnesses is a matter that is within the sound discretion of the trial court, which can either accept or reject all, part or none of the testimony it hears. *Guier v. Guier,* 918 S.W.2d 940, 946 (Mo.App.1996). Bearing this in mind, we note that appellant contends that the trial court's division of net assets allocated 88% to respondent and 12% to him, while respondent contends that she received 67% of the net assets, and appellant received 33%. After reviewing the record, we find that it would support respondent's contention as to the percentage of the marital property each party received, if the trial court chose to believe respondent's testimony as to the nature and value of the property, which it was free to do. The issue is whether this division was fair and equitable, given the record.

In alleging that the trial court did not equitably divide the marital property because it did not properly consider factors (2) and (4) of § 452.330.1, appellant assumes that the trial court could not have given due consideration to these factors in arriving at its division of property. His assumption is not supported by the record, as there is nothing in the record to indicate that the trial court failed to properly take into consideration factors (2) and (4) as alleged. *Schroeder v. Schroeder,* 924 S.W.2d 22, 28 (Mo.App.1996). Thus, we can presume that the trial court did consider these factors, and the division was correct. *Gant v. Gant,* 892 S.W.2d 342, 346 (Mo.App.1995). The only question is whether the trial court could have properly considered factors (2) and (4) under the facts of the instant case and still have arrived at its division of property.

Appellant first contends that in making its division of property, the trial court did not consider the significant contributions he made to the marital assets. In this respect, the record reflects that he was, for all practical purposes, the sole provider during most of the marriage. Appellant testified that he worked for the railroad for twenty-three out of the twenty-five years of the marriage, providing almost all of the financial resources for the family. Respondent testified that she had worked outside of the home only briefly during the marriage and had only begun regular employment as a beautician shortly before the parties were separated.

Appellant's argument here overlooks the fact that the trial court is expressly instructed to consider the contributions of both spouses to the marital assets, including contributions made by spouses who are homemakers. § 452.330.1(2); *O'Neal v. O'Neal,* 703 S.W.2d 535, 538 (Mo.App.1985). And, as stated, *supra,* the trial court is permitted to attach any amount of weight it deems appropriate to the individual factors. *Wright,* 788 S.W.2d at 354. Here, the court could have reasonably given great weight to respondent's contributions as a homemaker. In any case, regardless of the weight the trial court did assign to the issue of the parties' respective marital contributions, this is but one factor that is weighed with the other four factors in the § 452.330.1 analysis. Thus, we cannot say that the trial court's division of property failed to adequately consider factor (2) of § 452.330.1 as appellant contends.

Appellant next claims that in dividing the property, the trial court did not properly consider the conduct, good and bad, of both parties as required under § 452.330.1(4). Appellant specifically contends that the trial court failed to consider evidence concerning respondent's bad conduct. In this respect, he testified that respondent had been violent and abusive toward him. In support of his argument that the trial court only considered his bad conduct, appellant points to the record, where the trial court, in making its custody determination, stated that there was "apparent domestic violence by the [appellant] against the Respondent during the marriage...." Assuming the trial court chose to believe respondent's testimony concerning appellant's bad conduct, and disbelieve his testimony as to her bad conduct and his good conduct, it was free to do so, as the trial court is authorized to make determinations of credibility, *Guier,* 918 S.W.2d at 946. Thus, we cannot find that the trial court, in dividing

the marital property of the parties, failed to consider their conduct.

### ·B. Division of Non–Marital Property

In sub-point (C) of Point I, appellant alleges that the trial court failed to properly characterize and set-off to him certain personal property as his non-marital property. In the alternative, he alleges that if the property was, in fact, marital property, the trial court failed to divide it between the parties.

■ The burden of demonstrating error is on the party challenging the divorce decree. *Allen,* 927 S.W.2d at 885. Here, appellant has failed to set out with sufficient particularity in his brief the property which he claims was non-marital property or the values he assigns to it. *In re Marriage of Daniele,* 854 S.W.2d 489 (Mo.App.1993). Finding inadequate references to the record in appellant's brief to support his claim, we hold that he has not preserved this issue for appellate review. *Id.*

Point denied.

### II. Maintenance

■ In Point II, appellant alleges that the trial court's $500 per month award of maintenance to respondent was against the weight of the evidence and an abuse of discretion because it did not properly take into consideration his ability to pay. Appellant argues that given the trial court's division of property, his child support obligation and the award of partial attorney's fees to respondent, he did not have the ability to pay the maintenance obligation ordered by the trial court. We disagree.

Section 452.335.1 RSMo 1994, establishes a two step test for maintenance awards. First, the trial court must find that the party seeking maintenance lacks sufficient property, including marital property apportioned during the dissolution proceeding, to provide for his or her reasonable needs. *Hicks v. Hicks,* 859 S.W.2d 842, 846 (Mo.App.1993). Second, if the party seeking maintenance lacks sufficient property to meet his or her needs, the court then must determine whether the party's reasonable needs can be met through appropriate employment. *Id.*

Once the trial court determines that a maintenance award is necessary in a given case, it must then set the amount and duration of maintenance after considering all the relevant factors found in § 452.335.2, one such factor being the ability of the spouse to pay maintenance. *Price v. Price,* 921 S.W.2d 668, 672 (Mo.App. 1996).

■ Here, appellant is not contending that respondent is not entitled to maintenance or that the maintenance award does not reflect her needs. Rather, he is attacking the reasonableness of the amount of maintenance awarded in light of his ability to pay. The issue, then, is whether, based on the record, the court abused its discretion in awarding maintenance of $500 per month after considering appellant's ability to pay. Viewing the evidence most favorable to the decree as to maintenance and appellant's ability to pay, and disregarding all contrary evidence, *Dodson,* 904 S.W.2d at 6, we find that the trial court could have concluded appellant had the ability to pay maintenance in the amount of $500 per month.

■ Maintenance should not be disturbed on appeal unless it is " 'wholly beyond the means of the spouse who pays maintenance.' " *Price,* 921 S.W.2d at 672, citing *Theilen v. Theilen,* 847 S.W.2d 116, 123 (Mo. App.1992). The trial court may consider a party's past, present and future income and expenses as evidence of the ability to pay maintenance. *See, e.g., Bradley v. Bradley,* 880 S.W.2d 376, 379 (Mo.App.1994) (stating that past, present and future earning capacity is a relevant consideration in determining ability to pay).

As to appellant's income, the record indicates that he had a yearly income of $35,947 in 1993 and $43,366 in 1994, and a year-to-date income of $24,414 in July, 1995, or $4,069 per month. From this evidence, the trial court determined appellant's gross monthly income to be $3,167, as reflected in the court's Form 14 calculation, or $38,004 per year. This finding of gross monthly

income was reasonable, as the trial court was entitled to believe respondent's evidence and disbelieve appellant's evidence concerning his annual income in determining the same. *Guier*, 918 S.W.2d at 946. In this respect, it is apparent that the trial court simply did not believe appellant's testimony that his new employment contract would decrease his gross monthly income to $2,400 to be credible.

With respect to appellant's obligations and expenses, he presented evidence at trial showing that his total expenses were approximately $1,500 per month, which the trial court was free to believe or disbelieve. *Id.* Respondent argues that appellant improperly off-set his income with expense deductions for contributions to his retirement accounts and for loan payments toward his attorney's fees. Examining the record, we have no way of knowing what expenses from appellant's income and expense statement the trial court allowed or disallowed. As stated, *supra*, appellant has the burden of overcoming the strong presumption that the trial court's maintenance award is correct. *Allen*, 927 S.W.2d at 885; *Dodson*, 904 S.W.2d at 6. Thus, because the record would support a finding that not all of appellant's expenses should be allowed as claimed, and because appellant had the burden of demonstrating the court's error, *Allen*, 927 S.W.2d at 885, we find that we cannot convict the trial court of the error that he alleges.

Point denied.

## III. Child Support

■ In his third point, appellant alleges that the trial court erred in its award of child support to respondent as an abuse of discretion. Specifically, he alleges that the trial court erred in that: (1) in rejecting the parties' Form 14 calculations and doing its own Form 14's, the trial court failed to include appellant's extraordinary medical expenses for Ryan and post-secondary educational expenses for Christopher; and (2) its finding that the split-custody PCCSA (SC–PCCSA) of $297 per month was "unjust and inappropriate" and rebutting the amount to $350 per month was an abuse of discretion because it did not take into consideration his ability to pay. Appellant's claims that the trial court failed to include extraordinary medical and post-secondary educational expenses in its Form 14 calculations are issues of "rejection," rather than "rebuttal." *Woolridge*, 915 S.W.2d at 379. Thus, we will address the issues of rejection appellant presents together and deal with the rebuttal issue separately.

### A. Trial Court's Form 14 Calculation

Appellant contends that the trial court's Form 14 calculation for child support from respondent to appellant was incorrect in that it failed to include amounts for extraordinary medical expenses for Ryan and post-secondary educational expenses for Christopher. He argues that under the evidence, the trial court was required to include these expenses in its Form 14 calculation. We disagree.

■ Appellant is correct in stating that the use of Form 14 in calculating child support is mandatory. *Woolridge*, 915 S.W.2d at 378. However, it is left to the trial court to determine what items are properly included in the Form 14, based on the worksheet's directions for completion and the evidence in the case. *Id.* at 379. Thus, the fact that Form 14 does provide for the inclusion of these extraordinary expenses does not mandate their inclusion unless the evidence supports such.

#### 1. Extraordinary Medical Expenses

■ Appellant contends that the trial court erred in its Form 14 calculation as to the PCCSA owed to appellant from respondent because it did not include extraordinary medical expenses for Ryan's diabetes. This issue is addressed in the Form 14 directions for completion. Civil Procedure Form No. 14, Directions for Completion, Worksheet line 4d, pertains to the inclusion in Form 14 of extraordinary medical expenses and states the following caveat:

This entry should be used only for **long-term chronic conditions**; uninsured medical or dental costs incurred for routine or single occurrence illnesses or injuries, to the extent such aggregate more than $100

per year per child, should be handled by separate order (emphasis added).

The issue, then, is whether the evidence in the record demonstrates that Ryan's diabetes qualified as a "long-term chronic condition," requiring the inclusion of related, recurring expenses in the trial court's Form 14 calculation.

Ryan was diagnosed with diabetes while his parents' dissolution was pending. The evidence was that appellant had already incurred expenses for Ryan's hospitalization, ICU treatment, and ambulance and medical services rendered at the time of his diagnosis of diabetes. The question, then, for the trial court was whether these were recurring expenses associated with a "long-term chronic condition."

There is nothing in the record to reflect that Ryan's condition would precipitate recurring expenses or in what amount. Appellant admits in his brief that "neither party knew what the added expense would average on a continuing basis" at that time.[3] Because appellant had the burden of proof with respect to the inclusion of extraordinary medical expenses, it was his burden to show that the expenses would be recurring in nature and in what amount. Thus, because appellant failed in this burden, we cannot convict the trial court of error for failing to include in its Form 14 calculation of the PCCSA an amount respondent owed appellant for extraordinary medical expenses associated with Ryan's diabetes.

Finding as we do on this issue does not preclude, upon proper proof, the inclusion of extraordinary medical expenses associated with Ryan's diabetes in a future modification of child support. As to the expenses associated with Ryan's diagnosis that have already been incurred, these expenses could still be handled by separate order, in accordance with Form 14 directions, as expenses for a "single-occurrence" illness.

## 2. Post–Secondary Educational Expenses

Appellant next contends that the trial court erred in its child support award in that it failed to take into account in its Form 14 calculation of the PCCSA that respondent owed appellant expenses associated with Christopher's post-secondary education. Civil Procedure Form No. 14, Comments for Use (E), addresses post-secondary educational expenses:

> Post-secondary educational expenses are not factored into the Schedule of Basic Child Support obligation. Post-secondary educational expenses can be ordered by the court if it is determined by the parents or the court to be appropriate for the parents to contribute to the costs of such programs....

There are two methods by which a trial court may include post-secondary educational expenses in its child support award. These expenses can either be included in the Form 14 calculation, as provided in Civil Procedure Form No. 14, Comments for Use (E), or may be considered in rebutting the Form 14 PCCSA as being "unjust and inappropriate," adding an appropriate amount for college expenses. *DeCapo v. DeCapo*, 915 S.W.2d 343, 347 (Mo.App.1996).

Regardless of how the trial court chooses to address the issue of including post-secondary educational expenses in its child support award, it is required to consider several factors, including the financial ability of the parents to pay, the nearness of the child to his or her majority and whether the child is self-supporting. *Bryant v. Lloyd*, 747 S.W.2d 648, 649 (Mo.App.1988). Here, the trial court specifically found that because Christopher had several jobs, he had significant income of his own, and that as a result, appellant did not require any child support from respondent for Christopher's support. Based on this evidence, it was reasonable for the court to have determined that Christopher had sufficient financial resources of his own to pay his post-secondary educational expenses without contribution from either appellant or respondent. Thus, we cannot convict the trial court of error in failing to include post-secondary educational expenses

3. Appellant did file a motion to reopen to receive evidence on the amount of recurring monthly expenses he would incur as a result of Ryan's diabetes, which was overruled. Appellant does not appeal the trial court's denial of his motion.

for Christopher in its Form 14 PCCSA calculations.

## B. Rebuttal of the SC–PCCSA

In appellant's final claim with respect to child support, he alleges that the trial court's finding that the SC–PCCSA of $297 per month was "unjust and inappropriate" and that the reasonable amount was $350 was an abuse of discretion. Specifically, he contends that the trial court failed to consider his ability to pay the child support ordered in light of his expenses, debts and court-ordered obligations imposed in his dissolution. We disagree.

Civil Procedure Form No. 14, Comments for Use (C), provides the proper procedure for calculating Form 14 child support in cases of split-custody, such as we have here. In split-custody cases, each party is required to prepare and submit to the trial court two Form 14's, one for each custodial parent based on the number of children in his or her custody. The trial court then must determine the "custodial PCCSA" for each parent. This is accomplished by either accepting a Form 14 submitted by one of the parties, or by doing its own if it rejects the parties'. *Id.* Once the custodial PCCSA is determined for each parent, the lesser amount is subtracted from the greater with the difference being the "SC–PCCSA."

 Here, after the trial court rejected[4] the Form 14's submitted by the parties, it completed its own as required. *Woolridge,* 915 S.W.2d at 381–82. As to the two children in appellant's custody, the trial court calculated the appellant's custodial PCCSA to be $186; and as to the child in respondent's custody, it calculated her custodial PCCSA to be $483. By subtracting $186 from $483, the trial court determined the SC–PCCSA to be $297 per month, which it rebutted as being unjust and inappropriate, finding the reasonable child support amount to be $350 instead. The issue then is whether the evidence supports this rebuttal of $53.

 It is presumed that the amount of child support calculated pursuant to Form 14 and accepted by the trial court is the correct amount to be awarded, subject to being rebutted as being "unjust and inappropriate." *Woolridge,* 915 S.W.2d at 380. The burden to show a need for deviating from the Form 14 PCCSA is on the party seeking to rebut the presumption. *Price,* 921 S.W.2d at 673. Although it is not clear from the record whether respondent expressly sought to rebut the $297, she did receive the benefit of the trial court's upward deviation from it. Thus, the burden falls on her to support with the record the need for the trial court's deviation from the SC–PCCSA of $297.

Rule 88.01 provides that the presumed correct child support amount [PCCSA] calculated pursuant to Form 14 may be rebutted upon a finding that it is unjust or inappropriate **after consideration of all relevant factors.** Section 452.340.8 provides the presumed correct child support amount may be rebutted upon a finding that it is unjust or inappropriate **after consideration of all relevant factors, including the factors set out in § 452.340.1.** Unlike a Form 14 calculation, there is no mandatory worksheet or formula to be used in determining whether a Form 14 amount is unjust or inappropriate.

*Woolridge,* 915 S.W.2d at 379 (emphasis added). Thus, in determining whether the SC–PCCSA is unjust and inappropriate, the trial court is to take into consideration any relevant factors, including the factors set out in § 452.340.1. The relevant factors as set out in § 452.340.1 RSMo Cum.Supp.1996 are as follows:

(1) The financial needs and resources of the child;

(2) The financial resources and needs of the parents;

(3) The standard of living the child would have enjoyed had the marriage not been dissolved;

(4) The physical and emotional condition of the child, and his educational needs.

---

**4.** The trial court determined that appellant's gross monthly income was not correctly represented on the parties' Form 14's. Thus, the trial court was free to reject the parties Form 14's and do its own. *Woolridge,* 915 S.W.2d at 379.

In rebutting the $297, the record reflects that the trial court found, after considering all relevant factors, that "the minor child, Christopher, has significant income of his own and . . . each party has primary custodial responsibility for one of the remaining children." The trial court further stated: "There will be no child support payable from the Respondent to the Petitioner for Christopher Michael Crews." From this, it is evident that the trial court found that appellant did not require child support from respondent for Christopher in that he was providing for his own support. Thus, the trial court was rebutting on the basis of factor (1) of § 452.340.1, the financial resources of the child, Christopher.

At first glance, the rebuttal here would seem to be one of "rebutting up" the SC–PCCSA from $297 to $350, which would imply that respondent required greater support for the child in her custody. As such, the burden would be on respondent to demonstrate that the record supports rebuttal on this basis. However, on closer review, what actually occurred here was that the trial court, in effect, "rebutted down" appellant's custodial PCCSA from $186 to $133 to reflect its finding that appellant did not need support from respondent for Christopher. This "rebutting down" of appellant's custodial PCCSA by $53 had the effect of "rebutting up" the SC–PCCSA by $53.

We would note that in rebutting child support in cases of split-custody, it is somewhat confusing as to what figure the trial court is actually rebutting—a "custodial PCCSA" or the resulting "SC–PCCSA." Technically, under the Form 14 procedure, the trial court rebuts the SC–PCCSA. However, practically speaking, depending on the basis for rebuttal, it may be rebutting the lesser custodial PCCSA. The confusion results from the fact that although there are only two parents for custody purposes, for child support purposes in split-custody cases, there are two non-custodians and two custodians and two Form 14 custodial PCCSA's, with the lesser custodial PCCSA being set-off against the greater to arrive at one SC–PCCSA, resulting in only one court-ordered child support payment, rather than one for each custodial

parent. As a result, a rebuttal can appear as being either a rebuttal of the custodial PCCSA's or the SC–PCCSA.

If the rebuttal occurs, as it did here, on the basis that the custodian with the lesser custodial PCCSA should receive more or less from the other parent, it would appear to be a rebuttal of the lesser custodial PCCSA. Of course, any rebuttal of the lesser custodial PCCSA has an up or down effect on the resulting SC–PCCSA. On the other hand, if a rebuttal is based on a claim that the custodian with the greater custodial PCCSA should receive more or less, i.e., the SC–PCCSA ordered paid is more than the expenses proven for the child, it would appear to be a rebuttal of the SC–PCCSA. This results from the fact that the SC–PCCSA, unlike the lesser custodial PCCSA, is ordered paid to the custodian with the greater custodial PCCSA. Of course, the confusion grows when there is rebuttal on more than one basis, one or more directed at the lesser custodial PCCSA and one or more at the greater.

■ Ultimately, the distinction between rebutting "a custodial PCCSA" or "SC–PCCSA" is only important in assisting attorneys and trial courts in properly understanding and considering the rebuttal issues in a given case. In this respect, given the nuances of rebutting child support in split-custody cases, it would seem that this court's suggestion in Woolridge regarding rebuttal findings would bear repeating—that in cases of "rebuttal," although not required, in order to insure meaningful appellate review, trial courts should consider including for the record specific findings as to the basis for and manner of calculating the rebuttal amount. Woolridge, 915 S.W.2d at 382.

■ As to the sufficiency of the record to support the trial court's rebuttal here, there was evidence from which the trial court could find that the child, Christopher, was substantially providing for his own support, and that appellant only required contribution from respondent for the one child, Ryan. The trial court was free to believe this evidence, and as such, was free to use this fact in rebutting the SC–PCCSA as being unjust and inappropriate. Although there is nothing in the

record to indicate how the trial court calculated the $53 rebuttal, we note that using its Form 14 figures, if appellant's Form 14 custodial PCCSA had been calculated for one child, instead of two, which is, in effect, what the trial court found should occur, the amount would be $129, instead of $186, a difference of $57. From this, we find that the record would support a rebuttal of up to $57, which is greater than the $53 rebutted by the trial court.

Having determined that there was a sufficient evidentiary basis for the trial court's rebuttal of $53, the question raised by appellant remains as to whether the trial court abused its discretion in ordering child support in the amount of $350 in light of appellant's ability to pay. As to the child support award of $350, appellant is the non-custodial parent. The ability of the non-custodial parent is a rebuttal factor under § 452.340.1(2).

In our discussion of appellant's ability to pay maintenance of $500 per month, *supra,* we determined the record was sufficient for the trial court to find that the appellant had the ability to pay $500 per month in maintenance, while still meeting his expenses, debts, $350 child support obligation and court-ordered payment of $5,000 in partial attorney's fees to respondent. We also found no abuse of discretion in ordering appellant to pay $500 in maintenance, based on his ability to pay. The reasoning applied as to why the trial court did not abuse its discretion in awarding maintenance in light of appellant's ability to pay applies equally to his ability to pay the $350 per month in child support. We find no abuse of discretion as to the trial court's award of child support to respondent in the amount of $350.

In determining the sufficiency of the record to support the trial court's rebuttal of the $53, we looked at the basis given for the rebuttal, which was, as stated *supra,* that appellant needed less support from respondent for the two children in his custody. This, of course, would not have precluded the appellant from attacking the award of support on the basis that the respondent's expenses for the child in her custody were not equal to or greater than the amount of the award, factor (1) under § 452.340.1. However-

er, appellant did not attack the award on this basis, but instead, chose to attack it on the basis of his inability to pay. Even if he had chosen the alternative basis, the trial court's Form 14 for respondent reflected a custodial PCCSA of $483, substantially greater than the $350 awarded to respondent. Thus, in attacking the $350 child support award to respondent on the basis her expenses for the child in her custody were less than the amount awarded, appellant would have had to overcome the presumption that respondent should receive $483 in support from him for the child in her custody.

Point denied.

## IV. Attorney's Fees

In appellant's last point, he alleges that the trial court erred in ordering him to pay to respondent partial attorney's fees of $5,000. We disagree.

Missouri courts have historically adhered to the "American rule" that, with certain exceptions, litigants bear the expense of their own attorney fees. Ordinarily, any exceptions fit into one of four categories: recovery of fees pursuant to contract, recovery provided by statute, recovery as an item of damage to a wronged party involved in collateral litigation, and, occasionally, reimbursement when ordered by a court of equity to balance benefits. *Harris v. Desisto,* 932 S.W.2d 435, 448 (Mo. App.1996) (citations omitted). Here, we are concerned with only the second exception, where fees are provided for by statute.

Section § 452.355.1 states, in relevant part:

> The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. . . .

The court is "considered to be an expert in the necessity, reasonableness and value of

fees." *Leone*, 917 S.W.2d at 616. In cases of domestic relations, "very unusual circumstances" are not a necessary prerequisite to an award of attorney's fees. *Id.*

We find that it was well within the trial court's discretion to determine that appellant should be liable for some of respondent's attorney's fees. Marital misconduct, *Bixler v. Bixler,* 810 S.W.2d 95, 101 (Mo.App. 1991), and present earnings, *Jackson v. Jackson,* 655 S.W.2d 787, 788 (Mo.App.1983), are but two factors that the court might have taken into consideration. Further, a mere showing of financial inability to pay is not sufficient, in and of itself, to reverse the trial court's award of attorney's fees. *Titze v. Cunningham,* 661 S.W.2d 623, 625 (Mo.App. 1983). After carefully reviewing the record, we do not find the that trial court abused its discretion in ordering appellant to pay $5,000 of respondent's attorney's fees.

Point denied.

### Conclusion

The trial court's judgment is affirmed.

All concur.